UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>-against-<br><br>NICE SYSTEMS, INC.,<br><br>Defendant. | Civil Action No. _____<br><br>**COMPLAINT**<br>**AND DEMAND FOR JURY TRIAL**<br><br>**INJUNCTIVE RELIEF SOUGHT** |

NATURE OF ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended, by the Pregnancy Discrimination Act of 1978, and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of sex (female) and to provide appropriate relief to the Charging Party Stacey E. Malo, who was adversely affected by such practices. Plaintiff the United States Equal Employment Opportunity Commission alleges that Defendant, Nice Systems, Inc. ("NICE"), discriminated against Stacey E. Malo because of her pregnancy, a condition of her sex (female), retaliated against her for complaining about the discrimination, and constructively discharging her by subjecting her to an intolerable work environment.

JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345.  This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-5(f)(1) and (3), and Section 102 of Civil Rights Act of 1991, 42 U.S.C. § 1981a.

1

2. Venue is proper because a substantial part of the events giving rise to Title VII violations occurred in Delray Beach, Florida and Boca Raton Florida, which is within the jurisdiction of the U.S. District Court for the Southern District of Florida, West Palm Beach Division.

3. At all relevant times, the Charging Party Stacey E. Malo ("Charging Party" or "Ms. Malo") completed the majority of her work for NICE from her home located in Palm Beach County, Florida, including the selling of NICE software.  The Charging Party experienced many of the discriminatory acts from her home in Palm Beach County, including receiving less compensation than her male counterparts while she was employed by NICE.  The Charging Party also made complaints about the discrimination she experienced from her home in Palm Beach County.  While working from home in Palm Beach County, Charging Party was forced to resign from NICE.

## PARTIES

4. Plaintiff U.S. Equal Employment Opportunity Commission (the "Commission" of "the EEOC") is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

5. Defendant NICE is registered to do business in Florida, has continuously done business in Florida, and at all relevant times, employed at least 15 employees.

6. At all relevant times, NICE has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

## CONDITIONS PRECEDENT

7. More than thirty days prior to the institution of this lawsuit, Charging Party filed a Charge of Discrimination with the Commission alleging that NICE violated Title VII.

8. The Commission issued a Letter of Determination on April 30, 2020, finding reasonable cause to believe that NICE discriminated against Charging Party, retaliating against her, and constructively discharging her.

9. Prior to initiating this lawsuit, the Commission attempted to correct the unlawful employment practices alleged herein through informal methods of conciliation, conference, and persuasion, to remedy the discriminatory practices and provide appropriate relief.

10. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

11. NICE is a software company that sells software to assist with customer experience, regulatory compliance, and financial crime prevention.

12. NICE employs approximately 6,500 people worldwide.

13. Ms. Malo began working for NICE in August 2015 selling NICE's Incentive Compensation Management (ICM) software product.

14. Ms. Malo worked with a small team of employees that sold the ICM software product.

15. In March 2017, Chip Harder was hired to work at NICE.

16. In April 2017, Ms. Malo advised her supervisor, Chip Harder, that she was pregnant.

### Transfer of Existing Accounts

17. Ms. Malo was the most experienced employee on her team.

18. Typically, at NICE, when an employee leaves or is terminated, open sales opportunities or accounts are transferred to the most experienced employee.

19. In May or June of 2017, however, following the termination of one of Ms. Malo's colleagues, Mr. Harder transferred open opportunities to a new, male employee because Ms. Malo was pregnant. Mr. Harder transferred these open opportunities to a new male employee even though Ms. Malo had been working with the former employee on these opportunities and had working knowledge of the opportunities.

20. Upon information and belief, this was the first time a new employee was given open opportunities at NICE for Ms. Malo's team.

21. By not providing Ms. Malo with these open opportunities, she was denied the opportunity to earn commission on the accounts.

Sales Leads

22. In 2017, NICE generally assigned new sales leads to the employee assigned to the territory.

23. In approximately August or September 2017, during a team meeting, Mr. Harder said to everyone that Ms. Malo would not be receiving any new sales leads because of her condition—i.e. pregnancy.

24. The impact of not receiving any sales leads is a loss of income, and a long-lasting negative impact on her pipeline of generating future commissions.

25. Ms. Malo complained to Liz Almeida, Director of Human Resources, about Mr. Harder's discriminatory actions, but no action was taken.

26. In late August, Ms. Malo learned about a lead that came into her territory in July, but that had been assigned to a male colleague. Ms. Malo asked Mr. Harder to reassign the lead

to her because it was in her territory, but he refused. Mr. Harder violated NICE's policy by not assigning Ms. Malo the sales lead in her territory.

27. As a result, Ms. Malo lost the opportunity to work on new sales leads and to earn commissions from them.

28. Ms. Malo complained to Ms. Almeida and to Joyce Holupka, Vice President of Solution Sales, about Mr. Harder's discriminatory decision not to assign her the lead even though it was in Ms. Malo's territory.

29. In response, Ms. Holupka indicated that Ms. Malo was being too emotional because she was pregnant and told her not to overreact.

## Commissions

30. Beginning in February 2017, Ms. Malo began working on a deal related to licensing (hereinafter the "Licensing deal") for a client.

31. Ms. Malo originated the Licensing deal, and she did substantial work on the deal between February 2017 and October 2017, before her maternity leave.

32. In an email dated October 2, 2017, NICE acknowledged that Ms. Malo contributed in a material and substantive manner to the Licensing deal. The email also acknowledged that Ms. Malo would be earning commission on the Licensing deal if it closed before the end of 2017.

33. Nevertheless, because of her pregnancy and/or complaints of discriminatory treatment, NICE paid Ms. Malo significantly less commission than her non-pregnant male colleagues, notwithstanding that they neither originated the Licensing deal nor contributed as much work as Ms. Malo.

34. Ms. Malo complained to Human Resources, Ms. Holupka, and Wendy Olek,

Regional Vice President, about the discriminatory handling of her commission.

## Reassignment

35. Prior to her maternity leave, Ms. Malo's sales territory covered Canada.

36. Ms. Malo's territory had the most active sales and potential for new business, including one of NICE's biggest customers using the ICM software.

37. When Ms. Malo returned to NICE after her maternity leave, NICE reassigned her Canadian sales territory to a male colleague because of her pregnancy and/or complaints of discriminatory treatment

38. Ms. Malo's new sales territory had no existing NICE accounts and was a territory where NICE's competitors had all of the market.

39. Again, this reassignment resulted in lost opportunities for Ms. Malo, and decreased compensation.

## Constructive Discharge

40. Due to Mr. Harder's discriminatory treatment, Ms. Malo sought to transfer to a different department in NICE, where Mr. Harder would no longer have the ability to impact her work and compensation.

41. Ms. Malo's transfer requests were not granted.

42. Ms. Malo experienced a significant reduction in her earned commissions on the Licensing deal.  Mr. Harder refused to assign Ms. Malo account leads even when the lead was in her sales territory, and he permanently interfered with Ms. Malo's earning ability by assigning her a sales territory with little-to-no earning ability.

43. Mr. Harder also failed to acknowledge the work that Ms. Malo performed at NICE in workplace meetings, even though he acknowledged (by name) and publicly praised the

work of her other colleagues who had worked on the accounts.

44. NICE did nothing to address the complaints Ms. Malo made about the discrimination she suffered. Her work environment did not improve and nothing changed after her complaints.

45. Having exhausted all available measures known to her to address her discrimination and faced with the reality that nothing was going to improve or change, as a result of the intolerable work environment Ms. Malo was subjected to, she was forced to resign on March 2, 2018.

46. Because of NICE's unlawful conduct, Ms. Malo was harmed and suffered damages.

## STATEMENT OF CLAIMS

47. As set forth in paragraphs 17-29, Defendant subjected Charging Party to unlawful employment practices, in violation of Section 703(a)(1) of Title VII, by failing to transfer existing accounts to Ms. Malo and failing to give her sales leads because of her pregnancy, resulting in reduced compensation.

48. As set forth in paragraphs 25, 28, 30-34, and 37 Defendant engaged in unlawful employment practices, in violation of Sections 703(a)(1) and 704 of Title VII, by denying Charging Party compensation including failing to pay her an earned and appropriate commission on the Licensing deal because of her pregnancy, and in retaliation for engaging in protected activity.

49. As set forth in paragraphs 25, 28, 33-39, Defendant engaged in unlawful employment practices, in violation of Sections 703(a)(1) and 704 of Title VII, by reassigning Charging Party to a new sales territory because of her pregnancy, and/or in retaliation for

engaging in protected activity.

50. As set forth in paragraphs 17-46, Defendant engaged in unlawful employment practices, in violation of Sections 703(a)(1) and 704 of Title VII by constructively discharging Charging Party.

51. The effect of the practices complained of in paragraphs 11-46 has been to affect the terms and conditions of employment for Charging Party, to deprive her of equal employment opportunities and to otherwise adversely affect her status as employees because of her sex.

52. The unlawful employment practices complained of in paragraphs 11-46 were intentional.

53. The unlawful employment practices complained of in paragraphs 11-46 were done with malice or with reckless indifference to the federally protected rights of Charging Party.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining NICE, its officers, agents, servants, managers, employees, and all persons in active concert or participation with them, from participating in discriminatory conduct based on sex or pregnancy, including, but not limited to, permitting work decisions on the basis of sex and/or pregnancy and/or retaliating against employees who engage in statutorily protected activity in the workplace;

B. Order NICE to institute and carry out policies, practices, and programs which provide equal employment opportunities for women and which eradicate the effects of its past and present unlawful employment practices;

C. Order NICE to make Charging Party whole by providing appropriate back-pay with

prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of NICE's unlawful employment practices including but not limited to reinstatement and/or front pay;

      D.    Order NICE to make Charging Party whole, by providing compensation for past and future pecuniary and non-pecuniary losses resulting from the unlawful employment practices described above, including, emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial;

      E.    Order NICE to pay Charging Party punitive damages for engaging in intentional discrimination with malice or with reckless indifference, in amounts to be determined at trial;

      F.    Grant such further relief as the Court deems necessary and proper in the public interest; and

      G.    Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Date: June 30, 2020

Respectfully submitted,

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Respectfully submitted,

SHARON FAST GUSTAFSON
General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel
U.S. Equal Employment Opportunity Commission
131 M Street, N.E.

Washington, D.C. 20507

ROBERT E. WEISBERG
Regional Attorney

s/Kristen Foslid
Supervisory Trial Attorney
Florida Bar No. 0688681
Kristen.Foslid@eeoc.gov
Tel: 786-648-5835
U.S. Equal Employment Opportunity Commission
Miami District Office
Miami Tower
100 S.E. 2nd Street, Suite 1500
Miami, Florida 33131
*Attorneys for Plaintiff EEOC*

s/Carmen Manrara Cartaya
CARMEN MANRARA CARTAYA
Trial Attorney
Florida Bar No.  0073887
U.S. Equal Employment Opportunity Commission
Miami District Office
100 S.E. 2nd Street, Suite 1500
Miami, Florida 33131
Tel: 786-648-5811
Carmen.Cartaya@eeoc.gov